1  **W. AUSTIN COOPER,**
   **A PROFESSIONAL CORPORATION**
2  **W. AUSTIN COOPER, #030652**
   2525 Natomas Park Drive, Suite 320
3  Sacramento, CA   95833
   Telephone: (916) 927-2525
4  Facsimile:  (916) 920-0355

5  Attorneys for the Debtor
   and Debtor-in-Possession
6

7              **UNITED STATES BANKRUPTCY COURT**

8           **NORTHERN DISTRICT OF CALIFORNIA**
                      **(San Jose Division)**
9

10 In re                              Case No. 11-54571 SLJ 11
11
                                      Chapter 11
12
13 SAVITRIBEN PATEL, aka SABRINA      **DECLARATION IN SUPPORT OF**
   PATEL, SAVITRI PATEL, dba CYPRESS  **FIRST DAY MOTIONS**
14 TREE INN, aka SAVITRI K. PATEL, dba
   AMERICA'S BEST VALUE INN &         Final Hearing:        TBD
15 SUITES-CYPRESS TREE INN            Preliminary Hrng. Date: May 19, 2011
                                      Time:                 3:30 p.m.
16                                    Place:                U.S. FEDERAL
                                                            BLDG.
17                                                          280 S. FIRST ST.
                                                            SAN JOSE, CA.
18     Debtor.                                              95113
   _____/                       COURTROOM-
19                                                          3099, 3RD FLOOR
                                      Judge:                Stephen L. Johnson
20

21 I, SAVITRIBEN PATEL, declares:

22 1.   I am the owner and operator of the Cypress Tree Inn in Monterey, California. I am the

23 Debtor in this proceeding. I am familiar with the day-to-day operations of the Debtor and its

24 business and financial affairs.

25 2.   On May 12, 2011, Debtor (and the above captioned businesses collectively the "Debtors")

26 filed a petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code ("the

27 Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California

28 (San Jose Division).

                                      1

3.    To enable the Debtors to minimize the adverse effects of the commencement of their chapter 11 cases on their business, the Debtors have requested various types of relief in a number of applications and motions (collectively the "First-Day Motions"). The First-Day Motions seek relief intended to, among other things, maintain customer loyalty, engender vendor and supplier, confidence and bolster employees' morale. Each First-Day Motion is crucial to the Debtors' reorganization efforts. I submit this Declaration in support of the First-Day Motions. Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant First-Day Motion. All facts set forth in this Affidavit are based on my personal knowledge, upon information supplied to me by others employed by the Debtors, upon my review of relevant documents, or upon my opinion based upon my experience and knowledge of the Debtors operations, financial conditions and their present liquidity crisis. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am duly authorized to submit this declaration.

4.    The only real estate asset in this proceeding is the Cypress Tree Motel in Monterey. It is 55 motel units, 4 retail rental shops and 8 overnight RV spaces. It consists of two parcels, one vacant land of about half acre for future expansion. I acquired it on September 8, 2002 for $6,150,000.00. I put $1,800,000.00 down and financed a first of $3,000,000 and a second of $1,500,000.00 from Heritage bank. In 2003, I added a 3rd deed of trust for $400,000.00 from Commercial Realty Experts.

5.    As of the Petition Date, Debtors' entire obligations to the lenders under various Prepetition Credit Agreements total approximately $4,900,000.00 and one million remains outstanding under a judgment obtained by the City of Santa Cruz.

6.    The Debtor has no significant trade debt and almost all vendor purchases have been and are now COD.

7.    Events Leading to Chapter 11 to include a disputed of a TOT Tax Audit of a disputed $203,000.00. Gross room revenue have been steadily declining. From a high of $1,000,000.00 per year in 2004 to a low of $406,000.00 in 2009. 2010 and 2011 are projected at above $500,000.00 which suggests a turn-around in the economy and room rentals. We are presently

2

profitable only from May through October and need reserves established in those months to see us through the winter months until we can restructure our debt.

8.     All room receipts since filing have been deposited in account No. xxx-xxx-5553 at Chase Bank and have been denominated a cash collateral account. Its present balance is $ 780.00, but this does not take into account credit cards receipts pending to be transferred to the cash collateral account.

9.     The Debtor also moves this court for an  Order (A) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (B) Deeming Utilities Adequately Assured of Payment For Post Petition Services and (C) Establishing Pursuant to Sections 105 and 366 of the Bankruptcy Code. Uninterrupted utility services are essential to the Debtors' operations. The Debtors presently rely on these utility services to maintain operations at each of their locations. The Debtors cannot maintain their facilities and related operations if utility services are disrupted. Not is it realistic to expect the Debtors to be able to work out individual adequate assurance arrangement with the many different utilities. Utility Companies serving those locations. If the Utility Companies are permitted to terminate utility services after the 20-day standstill period provided by section 366 of the Bankruptcy Code, the Debtors' businesses will be irreparably harmed and their efforts to reorganize imperiled. In the past, the Debtors have enjoyed healthy relationships with their Utility Companies paying for utility services in accordance with the parties' custom and practice. The Debtors have generally paid their prepetition utility bills in full and on time. To the best of my knowledge, as of the Petition Date, there are no default with respect to any utility bills. In addition, there are no arrearage of any significance, other than amounts not yet due or invoiced or amounts that have not yet been paid on invoices received immediately prior to the Petition Date. The Debtors have sufficient cash reserves and access to cash collateral to pay promptly all of their respective obligations for utility services on an ongoing basis and in the ordinary course of their business.

10.     The Debtor is current on all pre-post petition employment, income and transit occupancy tax  due Monterey County. Other than the economy in general, other factors contribute to this Chapter11:

3

1          1.  Loss of Best Western franchise.

2          2.  High price of gasoline

3          3.  Judgment obtained by the City of Santa Cruz ($1,000,000.00) as a result of

4 operations of Torch-Lite Inn in Santa Cruz for delinquent Transit Occupancy Taxes.

5         I never had anything to do with the ownership of Torch-Lite Inn and should not have been

6 included in the judgment. I am appealing the judgment.

7 11.   This Emergency Motion is for (A) Interim and Final Orders Authorizing Use of Cash

8 Collateral and Granting Adequate Protection Nunc Pro Tunc to the Petition Date, (B) approving

9 terms of continued utility services.

10        Debtors do not have sufficient available sources of pospetition financing. The ability of

11 the Debtors to maintain business relationships with their vendors and suppliers, to purchase new

12 inventory and otherwise to finance their operation is essential to the Debtors' continued viability.

13 As discussed above, all of the Debtors' Prepetition Collateral is encumbered pursuant to various

14 prepetition credit agreements.

15        The Debtors have an urgent and immediate need for cash to continue to operate their

16 business and to seek relief of this Court through the procurement of debtor-in-possession

17 financing by use of cash collateral sufficient to meet the Debtors' operating expenses, and to pay

18 critical vendors, professional fees and expenses, and other expenditures. Without immediate (and

19 ongoing) access to the cash in the Debtors' cash collateral account, the Debtors cannot pay

20 current and ongoing operating expenses, including, without limitation, postpetition wages and

21 salaries and necessary vendor products and services. Consequently, the Debtors will suffer

22 irreparable harm, thereby jeopardizing any prospects for success in this cases.

23        The Debtors considered new financing to replace or supplement the financing provided

24 by the Prepetition Lenders. Prior to the Petition Date, the Debtors considered other lenders but

25 were not able to secure postpetition financing on as competitive a basis as provided by the

26 Lenders within the short time frame and on terms required by the Debtors. Accordingly, the

27 Debtors believe that the financing arrangement proposed by her motion represent the best

28 available to it at this time.

4

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct, and, as to those matters declared as based on information and

3    belief, I believe those matters to be true.

4         Executed this 17th day of May, 2011, at Santa Cruz, California.

                                        By:   /s/ Savitriben K. Patel
                                              SAVITRIBEN K. PATEL
                                              Debtor and Debtor in Possession

Case: 11-54571    Doc# 14    Filed: 05/17/11    Entered: 05/17/11 17:55:02    Page 5 of 5